Alan H. Weinreb, Esq.
THE MARGOLIN & WEINREB LAW GROUP, LLP
165 Eileen Way, Suite 101
Syosset, New York 11791
Telephone: (516) 945-6055
alan@nyfclaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
AVAIL 1 LLC,

              Plaintiff,

              -against-

ANDREA C. ADOVASIO,
              Defendant(s).
--------------------------------------------------------X

                    CERTIFICATE OF
                    MERIT AFFIRMATION
                    PURSUANT TO
                    CPLR 3012-B

       Alan Weinreb Esq. pursuant to CPLR §2106 and under the penalties of perjury, affirms as follows:

1. I am an attorney at law duly licensed to practice in the state of New York and am affiliated with The Margolin & Weinreb Law Group, LLP, the attorneys of record for Plaintiff in the above-captioned mortgage foreclosure action.  As such, I am fully aware of the underlying action, as well as the proceedings had herein.

2. On November 5, 2018, I communicated with the following representative or representatives of Plaintiff, who informed me that he (a) personally reviewed plaintiff's documents and records relating to this case for factual accuracy; and (b) confirmed the factual accuracy of the allegations set forth in the Complaint and any supporting affidavits or affirmations filed with the Court, as well as the accuracy of the notarizations contained in the supporting documents filed therewith.

       Name: James Fratangelo       Title: Member

3. Based upon my communication with James Fratangelo, as well as upon my own inspection, review and other reasonable inquiry under the circumstances, including, but not limited to the review of the facts of the case as well as of the underlying note, mortgage and assignments, if any, modification(s), if any and extension and consolidations, if any, I affirm that, to the best of my knowledge, information, and belief, there is a reasonable basis for the commencement of the within foreclosure action and that the Plaintiff is currently the creditor entitled to enforce the rights of said documents noted above.  A copy of the note, mortgage and assignments, if any, modification(s), if any and extension and consolidations, if any, are annexed hereto.

4.   I am aware of my obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130.

Dated:  November 30, 2018
   Syosset, New York

        /s/ Alan H. Weinreb
        Alan H. Weinreb, Esq.



*442650069MTGG*

| Control Number | WIID Number | Instrument Type |
|---|---|---|
| 442650069 | 2004265-000026 | MTG |



**WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE**
**(THIS PAGE FORMS PART OF THE INSTRUMENT)**
**\*\*\* DO NOT REMOVE \*\*\***

**THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:**

TYPE OF INSTRUMENT  MTG - MORTGAGE

FEE PAGES  15              TOTAL PAGES  15

### RECORDING FEES

| | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $45.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| | |
| TOTAL FEES PAID | $70.00 |

### TRANSFER TAXES

| | |
|---|---|
| CONSIDERATION | $0.00 |
| | |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

RECORDING DATE              12/10/2004
                TIME              12:29:00

### MORTGAGE TAXES

| | |
|---|---|
| MORTGAGE DATE | 02/13/2004 |
| MORTGAGE AMOUNT | $450,000.00 |
| EXEMPT | No |
| | |
| COUNTY TAX | $0.00 |
| YONKERS | $0.00 |
| BASIC | $2,250.00 |
| ADDITIONAL | $1,125.00 |
| SUBTOTAL | $3,375.00 |
| MTA | $1,125.00 |
| SPECIAL | $0.00 |
| | |
| TOTAL PAID | $4,500.00 |

SERIAL NUMBER          CV55370
DWELLING                  1-6 Family
        THE PROPERTY IS SITUATED  IN
WESTCHESTER COUNTY, NEW YORK IN THE:

TOWN OF CORTLANDT

WITNESS MY HAND AND OFFICIAL SEAL

*Leonard N. Spano* (signature)

LEONARD N. SPANO
WESTCHESTER COUNTY CLERK

Record & Return to:
**ATTN  SANDRA BUESO**
**PONCE DE LEON FEDERAL BANK**
**2244 WESTCHESTER AVE**
**BRONX, NY 10462**

MP
Cot
1-6

Loan No. 01-01-10027

1122
12-00104301

S:55:11
B:1
L:5

ANDREA C. ADOVASIO

(Mortgagor)

to

PONCE DE LEON FEDERAL BANK

(Mortgagee)

---

PURCHASE MONEY MORTGAGE

---

Dated:           February 13, 2004
Location:        24 Elena Drive
Town of:         Cortlandt
County of        Westchester
State of         New York
Section 55.11; Block 1; Lot 5

PREPARED BY AND UPON RECORDATION RETURN TO:

Ponce De Leon Federal Bank
2244 Westchester Avenue
Bronx, New York 10462
Attention: Sandra Bueso
(718) 931-9000

Loan No. 01-01-10027

## PURCHASE MONEY MORTGAGE

**THIS MORTGAGE**, made this 13th day of February, 2004, by **ANDREA C. ADOVASIO**, having an address for purposes hereof at 24 Elena Drive, Cortlandt Manor, Town of Cortlandt, New York 10567 (hereinafter referred to as the "Mortgagor"), to **Ponce de Leon Federal Bank**, a banking institution organized under the laws of the United States of America, with its principal place of business at 2244 Westchester Avenue, Bronx, New York 10462 (hereinafter referred to as the "Mortgagee").

**WITNESSETH**, that to secure payment of an indebtedness in the sum of **Four Hundred Fifty Thousand and 00/100 ($450,000.00)** Dollars lawful money of the United States of America, to be paid with interest thereon, according to a certain Purchase Money Mortgage Note (hereinafter referred to as the "Note") or obligation bearing even date herewith, the Mortgagor has mortgaged, given, granted, bargained, sold, aliened, enfeoffed, conveyed, confirmed, pledged, assigned, and hypothecated and by these presents does hereby mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, assign and hypothecate unto Mortgagee:

All that certain plot, piece, or parcel of land with the buildings and improvements thereon erected, situate, lying, and being in the Town of Yorktown, County of Westchester, and State of New York, known by the street address 24 Elena Drive, Cortlandt Manor, Town of Cortlandt, New York 10567 and designated as Section 55.11; Block 1; Lot 5, as more particularly bounded and described on Scheduled "A" attached hereto and made a part hereof (the "Premises").

**TOGETHER** with all right, title and interest of the Mortgagor in and to the land lying in the streets and roads in front of and adjoining said Premises to the center line thereof.

**TOGETHER** with any and all articles of personal property attached to or used in any way in connection with the operation or renting of the Premises, including, but not limiting the generality of the foregoing to, all partitions, elevators, engines, motors, dynamos, boilers, furnaces, fuel oil, coal, heating, refrigerating, air conditioning, plumbing, gas and electric light equipment, vacuum cleaning systems, sprinkler systems or other fire preventing or extinguishing equipment and materials, stoves, ranges, refrigerators, washing machines, clothes dryers, dishwashers, refuse compactors, saunas, awnings, screens, window shades, furniture and furnishings for the common halls and lobbies, furnishings and equipment of any hotel, motel, resort, health spa, restaurant, recreation facility, hospital, nursing home, adult residence or other health care related facility, theater, place of public or private assemblage, club and lodge, constituting all or part of the mortgaged Premises; also all other articles constituting a part of or used in connection with the operation of the buildings and other structures situated upon and constituting part of the mortgaged Premises, to all of which the mortgagor represents that the Mortgagor has title free from any prior liens or encumbrances, and all buildings, structures, improvements, fixtures and articles of personal property at any time, now or hereafter constructed, affixed to or placed upon said Premises or used in connection with the operation thereof. This provision shall apply to any personalty or fixtures, now or hereafter in the Premises, even though any fixture or article of personal property may not form a part of the

1

## SCHEDULE "A"

ALL that certain plot, piece, or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Cortlandt, County of Westchester and State of New York, being known and designated as Lot No. 4 on a certain map entitled "Subdivision Map of Property known as Cortlandt Hills" made by J. Henry Carpenter & Co., dated August 30, 1982 and filed in the Westchester County Clerk's Office, Division of Land Records on September 1, 1983 as filed on map No. 21313. Said premises more particularly bounded and described as follows:

BEGINNING at the point of intersection of the westerly line of Elena Drive and the division line between Lots 3 and 4 as shown on the aforesaid File Map; said point being distant 960.15 feet as measured along said westerly line of Elena Drive from the southeasterly end of a 30 foot radius curve at Watch Hill Road as shown on Field Map No. 213.13;

RUNNING THENCE along said westerly line of Elena Drive South 12 Degrees 20 minutes 10 seconds East 59.33 feet;

THENCE continuing in a general southerly direction on a curve to the right having a radius of 500 feet a distance of 356.60 feet to a point on the northeasterly line of lands now or formally of Velardo;

THENCE along same North 34 degrees 09 minutes 50 seconds West 319.52 feet to a point on the southeasterly line of lands now or formerly of Anfiteatro;

THENCE along same North 54 degrees 04 minutes 00 seconds East 224.43 feet to a point on the division line between Lots No. 3 and 4 as shown on the aforesaid File Map;

THENCE along same North 77 degrees 39 minutes 50 seconds East 35.00 feet to a point of the westerly line of Elena Drive, said point and place of BEGINNING.

TAX ID:  55.11-1-5

Loan No. 01-01-10027

realty as a matter of law or may not be essential to the support of the realty, it being intended hereby that such fixtures and articles of personal property shall become a part of the mortgaged realty and shall be covered by the lien of this Mortgage and shall be subject to a security interest in accordance with Article 9 of the Uniform Commercial Code.  If any other security agreement and/or financing statement is executed simultaneously with the execution hereof, said security agreement and/or financing statement shall be deemed to be given by the Mortgagor and accepted by the Mortgagee as additional security and shall be in confirmation of the foregoing; the execution or delivery of such other security agreement and/or financing statement shall not render the security interest created hereby ineffective or without force, whether said security agreement and/or financing statement is filed or refilled or not, the security interest herein created being, notwithstanding the execution and delivery of such other security agreement and/or financing statement, fully effective and operative.  Should any of such fixtures and/or articles of personal property be placed in the Premises by the Mortgagor herein or any successor in interest subject to any prior security interest deemed superior to that created hereby, the lien of this Mortgage shall be deemed to include the equity and interest of the Mortgagor or any such successor in interest in any of such fixtures and/or articles of personal property and, in the event of any default hereunder, all the right, title and interest of the Mortgagor or of any such successor in interest in and to any and all such property is hereby assigned to the Mortgagee together with any benefits of any deposits or payments theretofore made thereon by the Mortgagor or any such successor in interest.  The provisions hereof are intended by Mortgagor and Mortgagee, and shall be deemed and construed, to constitute a security agreement in accordance with Article 9 of the Uniform Commercial code, creating a security interest in the property described in this paragraph. The Mortgagee is hereby authorized to file and refile financing statements relating to the security interests created hereby on behalf of and in the name of Mortgagor without the Mortgagor's consent to or execution of such filings whenever the Mortgagee deems it advisable for the purpose of complying with the Uniform Commercial Code and of effectuating, continuing or renewing the liens hereby created.

**TOGETHER** also with any and all award and awards heretofore made and hereafter to be made by any Municipal, County, State, Federal or other governmental authority to the present and/or all subsequent owners of the Premises herein described including any award and awards for any change or changes of grade of streets affecting said Premises, which said award or awards are hereby assigned to the said Mortgagee and the legal representatives, successors and assigns of the Mortgagee, and the said Mortgagee, and the legal representatives, successors and assigns of the Mortgagee (at its or their option) are hereby authorized, directed and empowered to collect and receive the proceeds of any such award and awards from the authorities making the same and to give proper receipts and acquittances thereof or, and to apply the same toward the payment of the amount owing on account of this Mortgage and its accompanying Note, notwithstanding the fact that the amount owing on account of this Mortgage and said Note may not be then due and payable, and the said Mortgagor for the said Mortgagor and the legal representatives, successors and assigns of the Mortgagor hereby covenants and agrees to and with the said Mortgagee and the legal representatives, successors and assigns of the Mortgagee, upon demand by the holder of this Mortgage, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award

2

Loan No. 01-01-10027

and awards to the holder of this Mortgage, free, clear and discharged of any and all encumbrances of any kind or nature whatsoever.

**TO HAVE AND TO HOLD** the above granted and described Mortgaged Property unto and to the use and benefit of Mortgagee, and the successors and assigns of Mortgagee, forever.

And the Mortgagor covenants with the Mortgagee as follows:

1.    Mortgagor warrants that Mortgagor has good title to the Premises and has the right to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that, except for this Mortgage, Mortgagor possesses an unencumbered fee estate in the Premises and the improvements subject to any leases and that it owns the Premises free and clear of all liens, encumbrances and charges whatsoever and those exceptions shown in the title insurance policy insuring the lien of this Mortgage.  Mortgagor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against the claims of all persons whomsoever.

2.    That the Mortgagor will pay the indebtedness as hereinbefore provided.

3.    That the Mortgagor will keep the buildings on the Premises insured against loss by fire and against any other hazard or casualty in addition to fire, against which the Mortgagee may from time to time deem it advisable to be insured (such insurance to be in such amounts and with such insurance carriers as the Mortgagee may in its sole discretion require and approve) for the benefit of the Mortgagee, and the Mortgagor will assign and deliver to the Mortgagee fully prepaid, unassigned, unpledged, and unencumbered policies of such insurance, as the Mortgagee may require, the unexpired premium or premiums on which shall at all times likewise be unassigned, unpledged and unencumbered, except that, in the event of any default hereunder, any unearned premium on any policy of insurance for fire or any other insurance required by the Mortgagee is hereby assigned to the Mortgagee and that the Mortgagor will reimburse the Mortgagee for any premiums paid for insurance by the Mortgagee on the Mortgagor's default in so insuring the buildings or in so assigning and delivering said policies; and that the provisions of subdivision (4) of Section 254 of the Real Property Law applying to insurance against loss by fire shall apply, so far as possible, to any other insurance required by the Mortgagee hereunder. This paragraph shall be construed pursuant to the provisions of subdivision (4) of Section 254 of the Real Property Law as it existed prior to the effective date of Chapter 830 of the Laws of 1965.

4.    The mortgagor will insure and keep insured all of the articles of personal property referred to herein against loss by fire or any other casualty or hazard against which the Mortgagee may from time to time deem it advisable to be insured for the benefit of the Mortgagee. This provision shall be construed in the same manner as the foregoing provision for the keeping of the buildings on the premises insured against loss by fire and any other casualty or hazard.

3

Loan No. 01-01-10027

     5.    That the Mortgagor will maintain the buildings on the premises in good repair, if all or any portion thereof is rented or adapted for renting, then the Mortgagor will maintain same in good rentable condition at all times, whether or not occupied.  Neither the value of the mortgaged Premises nor the lien of this Mortgage will be diminished or impaired in any way by any act or omission of the Mortgagor or any successor in interest thereto and Mortgagor will not do or permit to be done to, in, upon or about said mortgaged Premises or any part thereof, anything that may in any way substantially impair the value thereof or substantially weaken, diminish or impair the security of this Mortgage.  The Mortgagee may make whatever advances it deems necessary as a result of Mortgagor's default and/or in order to preserve and protect the mortgaged Premises and all such advances shall be deemed secured hereby, shall bear interest at the rate(s) specified in the Note and shall be allowed and collectible in any action to foreclose.

     6.    That no structural changes shall be made to the buildings on the Premises without the prior written consent of the Mortgagee and that no building on the Premises shall be removed or demolished without the prior written consent of the Mortgagee.

     7.    The Debt (as defined by the Note) shall become immediately due and payable at the option of Mortgagee, without notice or demand, upon any one or more of the following events ("Events of Default"):

     A.    if any portion of the Debt is not paid when due;

     B.    if any of the taxes or other charges are not paid when the same are due and payable or if more than 30 days after notice of such nonpayment from Mortgagee, has elapsed, whichever is later, subject to Mortgagor's right to contest such taxes or other charges;

     C.    if a default or an event which with notice or lapse of time or both has occurred and is continuing under the leases and has not been cured as provided therein or if any of the leases are canceled, terminated, abridged, modified or surrendered;

     D.    if any representation or warranty of Mortgagor made herein or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made;

     E.    if Mortgagor shall make an assignment for the benefit of creditors or if Mortgagor shall generally not be paying its debts as they become due;

     F.    if a receiver, liquidator or trustee of Mortgagor shall be appointed or if Mortgagor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or if any proceeding for the dissolution or liquidation of Mortgagor shall be instituted, however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor upon the same not being discharged, stayed or dismissed within sixty (60) days;

4

Loan No. 01-01-10027

G.     if Mortgagor shall be in default beyond any applicable cure period under any other mortgage or security agreement covering any part of the mortgaged Premises whether it be superior or junior in lien to this Mortgage;

H.     if the mortgaged Premises becomes subject to any mechanic's, materialman's or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of thirty (30) calendar days after Mortgagor's receipt of notice or such shorter period as to prevent the institution of a foreclosure action (nothing herein shall obligate the Mortgagee to deliver such notices);

I.     if Mortgagor fails to cure promptly any violations of laws or ordinances affecting the mortgaged Premises;

J.     if for more than thirty (30) days after notice from Mortgagee, Mortgagor shall continue to be in default under any other term, covenant or condition of the Note, this Mortgage or any of the Other Security Documents, except where Mortgagor shall have undertaken to cure such default and proceeds in good faith to complete the cure as quickly as reasonably possible, but not longer than sixty (60) days; or

K.     if any secondary financing is secured on the mortgaged Premises.

8.     That the holder of this Mortgage in any action to foreclose it, shall be entitled to the appointment of a receiver.

9.     That the Mortgagor will pay all taxes, including, but not limited to, corporate franchise taxes and real estate taxes, water rates, sewer charges, vault taxes and assessments and will submit to the Mortgagee receipted bills therefor on demand, and in default thereof, the Mortgagee may pay the same.  If any duplication of payment results from the failure of the Mortgagor to submit receipted bills, the cost and expense of procuring refund of duplicate payments shall be borne by the Mortgagor.

10.     That the Mortgagor within six (6) days upon request in person or within fifteen (15) days upon request by mail will furnish a written statement, duly acknowledged, setting forth the amount due on the Mortgage and whether any offsets or defenses exist against the Mortgage debt.

11.     Any notice, demand, statement, request or consent made hereunder shall be effective and valid only if in writing, referring to this Mortgage, signed by the party giving such notice, and delivered either personally to such other party, or sent by nationally recognized overnight courier delivery service or by certified mail of the United States Postal Service, postage prepaid, return receipt requested, addressed to the other party at the addresses set forth above (or to such other address or person as either party or person entitled to notice may by notice to the other party specify).

5

Loan No. 01-01-10027

Unless otherwise specified notices shall be deemed given as follows: (i) if delivered personally, when delivered; (ii) if delivered by nationally recognized overnight courier delivery service, on the day following the day such material is sent; or (iii) if sent by certified mail, when such notice is received or refused by Mortgagor.

12.    That in case of a sale, said Premises, or so much thereof as may be affected by this Mortgage, may be sold in one parcel.

13.    That the whole of the principal sum and the interest thereon shall become due at the option of the Mortgagee: (a) after default for thirty days, after notice and demand, in the payment of any installment of any assessment for local improvements, heretofore or hereafter levied, which is or may become payable in installments and which has affected, now affects or hereafter may affect the said Premises, notwithstanding that such installments may not be due and payable at the time of such notice and demand; (b) immediately upon the making of any structural change or upon the actual or threatened demolition or removal of any building erected upon said Premises without the prior written consent of the Mortgage, and in the event of such unauthorized structural change or demolition or removal of any building, the interest on the indebtedness secured by this Mortgage shall be at the rate or rates specified in the Note secured hereby from the date of the commencement of such unauthorized structural change or demolition or removal; (c) upon any default in keeping the buildings and contents on the Premises insured against loss by fire or any other casualty or hazard, as required by paragraphs numbered 3 and 4 above; and (d) if the buildings on the Premises are not maintained in reasonably good repair and in good rentable condition.

14.    In the event of the passage after the date of this Mortgage of any law of the State of New York deducting from the value of land for the purposes of taxation and lien thereon or changing in any way the laws of taxation of Mortgages or debts secured by Mortgages for State or local purposes or the manner of the collection of any such taxes, so as to affect said Mortgage, the holder of this Mortgage and of the debt which it secures shall have the right to give thirty days written notice to the owner of the land requiring the payment of the Mortgage debt. If such notice be given, the said debt shall become due, payable and collectible at the expiration of said thirty days.

15.    If said Mortgage is now or shall hereafter be protected or affected by Moratorium Laws or by any other statute or statutes preventing the Mortgagee from foreclosing for nonpayment of the principal at the expiration date hereof, the Mortgagor hereby undertakes to continue to pay amortization to the Mortgagee (if the Mortgagee so elects and only so long as the Moratorium Laws or any such other statute or statutes protect said Mortgagor from foreclosure for nonpayment of the balance of the principal debt), at the default rate set forth in paragraph 33, on the maturity date hereof and, thereafter, on the same days of the months herein provided for; provided, however, that if, and as, the laws of the State of New York require in connection with mortgages so protected or affected, that there be paid to the Mortgagee installments amortizing said debt greater in aggregate per annum than the aggregate per annum of the payments which would be due if based on the said last year's payments, then, at the option of the Mortgagee, and when after the maturity of said debt the Mortgagee may so elect, the installments payable

6

Loan No. 01-01-10027

following the installment required by this paragraph to be paid on the maturity date hereof shall be as provided for in said laws with interest at the default rate set forth in paragraph 33. In the event that the Mortgagor defaults in the payment of any such installment of amortization on any due date, the Mortgagee shall have the right to foreclose solely by reason of such default.

16. If any action or proceeding be commenced (except an action to foreclose this Mortgage or to collect the debt secured thereby) to which action or proceeding the holder of this Mortgage is made a party or in which it becomes necessary to defend or uphold the lien of this Mortgage, all sums paid by the holder of this Mortgage for the expense of any litigation to prosecute or defend the rights and lien created by this Mortgage (including reasonable counsel fees) shall be paid by the Mortgagor, together with interest thereon, at the rate or rates specified in the Note secured hereby and any such sum, with the interest thereon, shall be a lien on said Premises attaching or accruing subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and by the Note which is secures. In any action or proceeding to foreclosure this Mortgage and/or to recover or collect the debt secured thereby, the provisions of law respecting the recovery of costs, disbursements and allowances shall continue unaffected by this covenant.

17. If the said Premises as existing or used at any time are in violation of the Multiple Dwelling Law, Labor Law, or any other State or local statute, ordinance, code, rule, regulation or requirement or of any order issued or filed by any municipal or governmental authority or subdivision thereof, or if by reason of any change either in the physical condition of the Premises or its use or in the aforesaid laws, statutes, ordinances, codes, rules, regulations or requirements, or direction of any municipal or governmental authority or subdivision thereof or if, by reason of the filing of a violation against the said Premises they shall become and be in violation of any of the foregoing, the Mortgagor shall take immediate steps to alter the Premises as required to comply therewith. In any of the aforementioned events, (a) the alteration or repair shall proceed with the due diligence and shall be completed within a reasonable time, and (b) there shall be submitted to the Mortgagee, upon completion, (i) receipted bills evidencing the payment of the cost thereof and (ii) satisfactory proof that no liens or encumbrances have been or will be filed on account thereof, if the alterations or repairs require filing and approval of plans or specifications, said plans and specifications must first be approved by the Mortgagee before they are filed with the governmental department having jurisdiction thereof and the Mortgagor, on completion, shall procure and exhibit to the Mortgage a Certificate of Occupancy issued by said governmental department and a Notice of Dismissal of all violations; if the alterations do not require filing and approval of plans, the Mortgagor shall produce, on completion, a Notice of Dismissal of all violations. For the purposes of this Mortgage, any attempted compliance with the above by the partial or total vacating of the Premises shall not be considered compliance with the requirements hereof. On any occasion when the Premises shall be deemed to be in violation of any law, order, decree, code, rule or requirement relating to said Premises, it shall be deemed so to be on the assumption that the Premises are or will be fully occupied. The repairs and alterations to be made in order to comply with the foregoing shall include all unoccupied portions of the Premises with like effect as though they were fully occupied.

7

Loan No. 01-01-10027

18.     That in the event of any default hereunder on the part of the Mortgagor or any subsequent owner of said premises, the rents and profits of the mortgaged Premises are hereby assigned to the holder of said Mortgage as further security for the payment of said indebtedness. Immediately upon the occurrence of any default or breach, the Mortgagee shall have the right forthwith, with the irrevocable consent of the Mortgagor, or any subsequent owner or person then in possession, hereby given and evidenced by the execution of this Mortgage, to enter upon and take possession of the Premises including any portion occupied by the Mortgagor or any subsequent owner. At the option of the Mortgagee, such entry and taking of possession shall be accomplished either by actual physical entry and taking possession or by written notice given personally or by mail addressed to the owner at his address as it then appears on the records of the Mortgagee. Such entry and taking of possession may be so accomplished irrespective of the pendency of any action of foreclosure by the Mortgagee or any junior lienor. Simultaneously with such actual physical entry and taking of possession or the giving of such written notice as aforesaid, the rents, issues, profits and all other amounts accrued and accruing to the owner by reason of the ownership of the Premises, including deposits held as security under the leases, thereupon shall be deemed to be assigned as security to the Mortgagee together with the leases and all other documents evidencing such rents, issues, profits and other amounts, including deposits held as security under leases; and for the purpose of giving immediate effect to such assignment, no other or further instrument of assignment or other document shall be necessary or requisite. The Mortgagee shall then have the right to let the premises or any part thereof and to collect and receive all the rents, issues, profits, and all other amounts past due, due or to become due to the Mortgagor or any subsequent owner of the Premises by reason of such ownership and to apply the same after payment of all necessary charges and expenses in connection with the operation of said premises, including any managing agent's commission, at the option of the Mortgagee, on account of the interest, amortization, taxes, water rates, sewer charges, vault taxes and assessments, insurance premiums and any advances made by the Mortgagee for the account of the Mortgagor or on account of the debt hereby secured.

19.     In the event of any such entry and in the event of such taking of possession by the Mortgagee pursuant to the provisions above stated, or in the event of the appointment of a receiver of rents or profits in any action brought by the Mortgagee by reason of the provisions of this Mortgage, the Mortgagor or any subsequent owner, if in possession of any portion of the mortgaged Premises, shall be obligated to pay to the Mortgagee or to the receiver of rents a reasonable rental monthly in advance for the portion of the Premises so occupied. In the event a receiver is appointed by reason of such default or breach, the amount of rent payable shall be determined upon an application to be made by the receiver to the court for a determination of the reasonable rental value payable by the Mortgagor or any subsequent owner. In the event of a default in the payment of any amount of rent monthly in advance to be determined as above stated, the Mortgagor or any subsequent owner may be dispossessed by the usual summary proceedings in the same manner that nay defaulting tenant may likewise be dispossessed.

20.     The Mortgagor covenants that it will not assign, pledge or otherwise alienate any of the rents, issues and profits from said Premises without prior written consent of the Mortgagee and any such attempted assignment, pledge or alienation of said rents shall be subject and subordinate to the rights of the Mortgagee.

8

Loan No. 01-01-10027

21.    If, at any time, the income of the Premises shall be any criterion of the amount of interest or amortization payable by the owner, either by operation of any law or otherwise, the portion of the mortgaged Premises occupied by the owner shall be treated as income producing and the reasonable rental value thereof shall be treated as additional income from the mortgaged Premises.

22.    In the event that by law or by the provisions hereof the amount of income from the premises shall be any basis for a determination of the amounts payable to the Mortgagee, the Mortgagor shall make its books, records and vouchers of income and disbursements available for inspection by the Mortgagee at any time upon the giving of five days prior notice in writing to the Mortgagor.

23.    The Mortgagor or any subsequent owner of said Premises will, annually within sixty (60) days after the end of the Mortgagor's fiscal year, furnish to the Mortgagee or any subsequent holder of this Mortgage, a full and complete statement of all income and expenses incurred in the operation and maintenance of the said premises. Such a statement shall include a rent roll and such other information relating to the Premises as the Mortgagee may require. Such statement will also be furnished to the Mortgagee at any other time on demand.

24.    In compliance with Section 13 of the Lien law, the Mortgagor will receive the advances secured by this Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and the Mortgagor will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

25.    The Mortgagor covenants to pay to the Mortgagee a reasonable charge which the Mortgagee may impose, at its option, for the processing on its records of any change of ownership or substitution of bondsman or for any letter advice as to the amount of principal and interest owning on the Mortgage or for inspections of the mortgaged Premises in connection with payment of fire loss proceeds or condemnation award, or for any release, modification, extension, consent, easement, special agreement, reduction certificate, assignment, satisfaction of mortgage or other instrument relating to this Mortgage.

26.    The mortgagor covenants to pay to the Mortgagee on the first day of each and every month, with each payment due under the Note, one-twelfth (1/12) of the annual charges for real estate taxes, water rates, sewer charges, vault taxes and assessments affecting the Premises herein mentioned and, at the option of the Mortgagee, the annual premiums for fire, flood and other hazard insurance, which sums shall be held by the Mortgagee and used by it to pay such taxes and charges as the same become due and payable. The amount of such monthly payments is to be fixed and determined by the Mortgagee immediately after the date hereof and if, on the first day of any month hereafter, the total of the monthly installments theretofore paid to the Mortgagee shall be insufficient to pay such taxes and charges as shall then or thereafter be due and payable, the Mortgagor or any subsequent owner of the Premises shall pay to the Mortgagee such further sum as shall be necessary to make up such deficit within ten (10) days after written

9

Loan No. 01-01-10027

notice and demand therefor, and if there be any excess in any month over and above the sum necessary to pay such taxes and charges, it shall be applied to such taxes and charges subsequently accruing. Such funds held by the Mortgagee shall not be deemed trust or agency funds, may be commingled with the general funds of the Mortgagee and no interest or earnings thereon shall be payable by Mortgagee except as may be required by law. Upon Mortgagor's default in making any such payment or payments as and when herein provided, Mortgagee shall have the right (but not the obligation), in Mortgagee's sole and absolute discretion, to pay any such taxes or charges and Mortgagor shall be obligated to repay the same to Mortgagee with interest at the rate(s) specified in the Note secured hereby and such sums so advanced by Mortgagee, together with the interest thereon, shall be a lien on said Premises and secured by this Mortgage.

27.     In the event of a sale, conveyance or transfer of ownership of the mortgaged Premises by the Mortgagor or any subsequent owner thereof, this Mortgage will immediately become due and payable at the option of the Mortgagee. As sued in this paragraph, the phrase "sale, conveyance or transfer of ownership" shall be construed to include, but not limited to, with respect to the mortgaged Premises: (a) an installment sales contract; (b) a lease with an option to buy; (c) a lease for more than three (3) years including renewal terms; (d) a transfer of stock of the Mortgagor, if mortgagor is a corporation; (e) any change in the general partners comprising Mortgagor, as same presently exist, if Mortgagor is a partnership; (f) a transfer of membership interest of the Mortgagor or any change in the membership of the Mortgagor, as same presently exist, if Mortgagor is a limited liability company; and (g) the creation of any other lien or encumbrance involving a transfer of rights of occupancy.

28.     Upon the breach of any of the covenants hereof, the entire principal sum secured hereby shall, at the option of the Mortgagee or any subsequent holder of this Mortgage, become immediately due and payable and the Mortgagee or any subsequent holder hereof shall have the right to foreclose this Mortgage.

29.     This instrument and all of the covenants contained herein shall bind the heirs, executors, administrators, successors and assigns of the Mortgage and inure to the benefit of the successors and assigns of the Mortgage, with the effect as if such heirs, executors, administrators, successors and assigns were named herein.

30.     In the event the date for payment of the principal sum or any part thereof secured by the Note to which this Mortgage is collateral falls on a Sunday or any public holiday other than a half holiday, it is understood and agreed that interest thereon at the rate(s) provided for therein shall be paid to the actual date of payment of said principal sum or any part thereof.

31.     The term Note as used herein shall be construed to include "Bond".

32.     The terms and provisions of this Mortgage shall not be changed, modified, or discharged in whole or in part except by an instrument in writing signed by the party against whom enforcement of such change, modification or discharge is sought or by its agent thereunto duly authorized in writing.

10

Loan No. 01-01-10027

## STATEMENT ATTACHED TO MORTGAGE

MORTGAGOR(S):       Andrea C. Adovasio

MORTGAGEE(S):       Ponce de Leon Federal Bank

PREMISES:           24 Elena Drive, Cortlandt Manor
                    Town of Cortlandt, New York 10567

Check the Appropriate Box

1.    [X]    The attached mortgage covers real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having their own separate cooking facilities.

2.    [ ]    The attached mortgage does not cover real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having their own separate cooking facilities.

DATED:       February 13, 2004

By: _Andrea C. Adovasio_____
    Andrea C. Adovasio

Signed by the person(s) making
the statement having personal
knowledge of the nature of the
improvements.

1

Loan No. 01-01-10027

33.    Anything herein contained to the contrary notwithstanding, in the event the principal indebtedness as set forth in the Note and referred to herein becomes due and payable by the terms hereof or by reason of the Mortgagee exercising its option to call the same due, interest on the said indebtedness shall thereafter accrue at the rate of twenty-four and nine-tenths (24.9%) percent per annum and continuing until payment of the entire principal indebtedness and the same shall be collectible in any action to enforce this Mortgage and the Note secured hereby.

34.    In the event of a default of this Mortgage, or the note, Bond or other obligation secured thereby, Mortgagee shall have the right to sell the Premises by power of sale as prescribed in RPAPL Article 14.

**IN WITNESS WHEREOF**, this Mortgage has been executed by the Mortgagor on the day and year first above written.

_____
ANDREA C. ADOVASIO

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF WESTCHESTER    )

On the 13th day of February, in the year 2004, before, the undersigned, a notary public in and for said State, personally appeared ANDREA C. ADOVASIO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

STACY SCHNEIDER
Notary Public - State of New ?
No. 02SC6098963
Qualified in Suffolk County
My Commission Expires Sept. 19, 2007

11

ORIGINAL

Loan No. 01-01-10027

## NOTE

February 13, 2004                                   White Plains, New York

24 Elena Drive, Cortlandt Manor, Town of Cortlandt, New York 10567

Property Address

**FOR VALUE RECEIVED, ANDREA C. ADOVASIO**, residing at 24 Elena Drive, Cortlandt Manor, Town of Cortlandt, New York 10567 ("Maker"), hereby covenants and promises to pay to **Ponce De Leon Federal Bank**, a banking corporation, having an address at 2244 Westchester Avenue, Bronx, New York 10462 ("Payee"), or order, at Payee's address first above written or at such other address as Payee may designate in writing, **FOUR HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS** (U.S.$450,000.00), lawful money of the United States of America, together with interest thereon computed from the date hereof at the rate of seven (7.00%) percent per annum, which principal and interest shall be payable in monthly installments of $2,993.86 each, commencing on **April 1, 2004** and continuing on the first of each month thereafter, to be applied first against accrued interest at the aforesaid rate on the outstanding principal amount, and then in reduction of principal, until **March 1, 2034**, on which date all outstanding principal and accrued interest shall be due and payable. Interest shall be calculated on a 360 day year and actual number of days elapsed.

**Maker covenants and agrees with Payee as follows:**

1.       Maker will pay the indebtedness evidenced by this Note as provided herein.

2.       This Note is secured by a mortgage of even date herewith (the "Mortgage"), which Mortgage is a lien upon the property known as **24 Elena Drive, Cortlandt Manor, Town of Cortlandt, New York 10567** which is more particularly described in the Mortgage. All of the covenants, conditions and agreements contained in the Mortgage expressly are incorporated by reference herein and hereby are made a part hereof. In the event of any conflict between the terms of this Note and the terms of the Mortgage, the terms of the Mortgage shall be paramount and shall govern.

1

3.      Maker shall pay a late payment premium of 5 percent of any principal or interest payment made more than fifteen (15) days after the due date thereof, which premium shall be paid with such late payment. This paragraph shall not be deemed to extend or otherwise modify or amend the date when such payments are due hereunder. The obligations of Maker under this Note are subject to the limitation that payments of interest shall not be required to the extent that the charging of or the receipt of any such payment by the holder of this Note would be contrary to the provisions of law applicable to the holder of this Note limiting the maximum rate of interest which may be charged or collected by the holder of this Note.

4.      The holder of this Note may declare the entire unpaid amount of principal and interest under this Note to be immediately due and payable if Maker defaults in the due and punctual payment of any installment of principal or interest hereunder.

5.      Maker, and all guarantors, endorsers and sureties of this Note, hereby waive presentment for payment, demand, protest, notice of protest, notice of nonpayment, and notice of dishonor of this Note. Maker and all guarantors, endorsers and sureties consent that Payee at any time may extend the time of payment of all or any part of the indebtedness secured hereby, or may grant any other indulgences.

6.      Any notice or demand required or permitted to be made or given hereunder shall be deemed sufficiently made and given if given by personal service or by the mailing of such notice or demand by certified or registered mail, return receipt requested, addressed, if to Maker's address first above written, or if to Payee, at Payee's address first above written. Either party may change its address by like notice to the other party.

7.      This obligation may be prepaid without penalty on or after one year from the date hereof, but prior thereto, if the amount prepaid in the first year exceeds twenty percent (20%) of the original principal of the mortgage, then one hundred eighty (180) days interest on the excess amount prepaid may be charged by the mortgagee as a condition of accepting such prepayment.

2

8.   In the event that the title of the mortgaged premises is transferred, the total balance outstanding on this mortgage loan, together with interest, shall be due and payable on the date of the transfer.

9.   This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any change, modification, termination, waiver, or discharge is sought.  This Note shall be construed and enforced in accordance with the laws of New York.

**IN WITNESS WHEREOF,** Maker has executed this Note on the date first above written.

_____            _____
Witness                             **ANDREA C. ADOVASIO**

3

**ALLONGE TO NOTE**

This ALLONGE is affixed to and made a part of that certain **NOTE** given by ANDREA C. ADOVASIO to PONCE DE LEON FEDERAL BANK, in the principal amount of $450,000.00 dated February 13, 2004 held by PONCE BANK (f/k/a PONCE DE LEON FEDERAL BANK).

PAY TO THE ORDER OF AVAIL 1 LLC, a Delaware limited liability company having an address at 2100 Ponce de Leon Blvd Suite 720, Coral Gables Florida 33134, on behalf of itself and/or its successors and/or assigns.

Dated: April 5, 2018

PONCE BANK

By: _____
      Name: Steven A. Tsavaris
      Title:  Chief Executive Officer

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.



*581153512ASS001V*

## Westchester County Recording & Endorsement Page

### Submitter Information

| | | | |
|---|---|---|---|
| Name: | Partners Abstract Corp. NY | Phone: | |
| Address 1: | 1025 Old Country Rd # 409 | Fax: | |
| Address 2: | | Email: | |
| City/State/Zip: | Westbury NY 11590 | Reference for Submitter: | 10253916-Partners Abstract Corp. NY |

### Document Details

| | | | | | |
|---|---|---|---|---|---|
| Control Number: | 581153512 | Document Type: | **Assignment (ASS)** | | |
| Package ID: | 2018042500243001000 | Document Page Count: | **3** | Total Page Count: | **4** |

### Parties

☐ Additional Parties on Continuation page

| **1st PARTY** | | **2nd PARTY** | |
|---|---|---|---|
| 1:   PONCE BANK | - Other | 1:   AVAIL 1 LLC | - Other |
| 2: | | 2: | |

### Property

☐ Additional Properties on Continuation page

| | | | |
|---|---|---|---|
| Street Address: | 24 ELENA DRIVE | Tax Designation: | 55.11-1-5 |
| City/Town: | CORTLANDT | Village: | |

### Cross- References

☐ Additional Cross-Refs on Continuation page

| | | | |
|---|---|---|---|
| 1:   442650069 | 2: | 3: | 4: |

### Supporting Documents

### Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $20.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| Total Recording Fees Paid: | **$60.50** |

### Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

### Mortgage Taxes

| | |
|---|---|
| Document Date: | |
| Mortgage Amount: | |
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$0.00** |
| Dwelling Type: | Exempt: ☐ |
| Serial #: | |

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded:    04/25/2018 at 03:34 PM

Control Number:   **581153512**

Witness my hand and official seal

*Timothy C. Idoni*

Timothy C. Idoni
Westchester County Clerk

### Record and Return To

☐ Pick-up at County Clerk's office

**MARGOLIN & WEINREB, ESQ.**
**165 EILEEN WAY, SUITE 101**

**SYOSSET, NY 11791**

**PONCE BANK**

**TO**

**AVAIL 1 LLC**

ASSIGNMENT OF MORTGAGE

**DATED: as of April 5, 2018**

**PREMISES:**
24 ELENA DRIVE, CORTLANDT MANOR

County:  WESTCHESTER

Section 55.11
Block 1
Lot 5

## ASSIGNMENT OF MORTGAGE

KNOW THAT

PONCE BANK (f/k/a PONCE DE LEON FEDERAL BANK), a United States chartered bank having offices at 2244 Westchester Avenue, Bronx, New York 10462, Assignor, in consideration of TEN 00/100 ($10.00) DOLLARS and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, paid by AVAIL 1 LLC, a Delaware limited liability company having an address at 2100 Ponce de Leon Blvd Suite 720, Coral Gables Florida 33134, on behalf of itself and/or its successors and/or assigns, hereinafter collectively referred to as Assignee,

**HEREBY ASSIGNS** unto the Assignee:

Mortgage made by ANDREA C. ADOVASIO to PONCE DE LEON FEDERAL BANK (n/k/a PONCE BANK), in the principal amount of $450,000.00 dated February 13, 2004, recorded in the Westchester County Clerk's Office on December 10, 2004 as Control Number 442650069; as modified by an unrecorded Agreement dated May 27, 2009.

Covering premises known as and located at 24 Elena Drive, Cortlandt Manor, New York, also designated as Section 55.11, Block 1, Lot 5 on the Tax Maps of Westchester County, State of New York, as more particularly described in said mortgage.

TOGETHER with the Bonds or Notes or Obligations described in said mortgages and the moneys due and to grow due thereon with the interest;

TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

It is expressly understood that this assignment is made without recourse to, and without covenant or warranty, express or implied by, the assignor in any way whatsoever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because the mortgage(s) continue to secure bona fide debts.

**IN WITNESS WHEREOF**, the assignor has duly executed this assignment as of April 5, 2018.

PONCE BANK

By: _____

Name: Steven A. Tsavaris
Title:   Chief Executive Officer

STATE OF NEW YORK, COUNTY OF BRONX  ss.:

On April 5 , 2018 before me, the undersigned, personally appeared Steven A. Tsavaris personally
known to me or proved to me on the basis of satisfactory evidence to be the individual whose name
is subscribed to the within instrument and acknowledged to me that he executed the same in his
capacity, and that by his signature on the instrument, the individual, or the person upon behalf of
which the individual acted, executed the instrument.

Notary Public

EDWARD STEVEN FELDMAN
Notary Public State of New York
No. 02FE6118456
Qualified in New York County
Commission Expires November 08, 2020

Ponce De Leon Federal Bank, 2244 Westchester Avenue, Bronx, New York, 10462.

| Loan # 0101010027 |
| --- |

## Consolidation, Extension and Modification Agreement

**Date: July 31st, 2012**

**Lender: Ponce de Leon Federal Bank**

**Borrower (s) Name:**
**ANDREA C. ADOVASIO**

**Secured Property Address:**
24 Elena Drive, Cortlandt Manor, Town of Cortlandt, New York, 10567. Section: 55.11, Block: 1, Lot: 5, Town of Yorktown, County of Westchester, State of New York  and has the following legal description: SEE SCHEDULE "A" ATTACHED HERETO AND MADE PART HEREOF.

  **AGREEMENT**, made this 31st day of July in the year 2012 between **PONCE DE LEON FEDERAL BANK** which exists under the laws of the United States having an office at 2244 Westchester Avenue, Bronx, New York, 10462 ("Mortgagee"), and **Andrea C. Adovasio** ("Mortgagor") residing at: 24 Elena Drive, Cortlandt Manor, New York, 10567.

  **WHEREAS**, the Mortgagee is the lawful owner and holder of a mortgage (the "Existing Mortgage") covering the premises known as 24 Elena Drive, Cortlandt Manor, Town of Cortlandt, New York, 10567, dated February 13th, 2004 in the principal sum of **$450,000.00** and recorded or filed in the office of the County Clerk, Westchester County on December 10th, 2004 at Control Number: 442650069, WIID Number: 2004265-000026, Serial Number: CV55370, upon which mortgage together with the agreement secured thereby (the "Prior Note"). The outstanding unpaid principal balance upon the Mortgage is **$440,399.13**; and

  **WHEREAS**, the mortgagee is extending to the Mortgagor an additional principal sum of **FIFTY NINE THOUSAND SIX HUNDRED DOLLARS AND EIGHTY SEVEN CENTS $59,600.87 ("Additional Principal")** in addition to the outstanding unpaid principal balance of the prior note amount of **$440,399.13** for a Consolidated sum of **$500,000.00**; and

  **WHEREAS**, the Mortgagor is the owner in fee simple of the premises described in Schedule "A" hereto which is subject to the New additional Principal and the Prior Mortgage; and

**WHEREAS**, the Mortgagee and the Mortgagor have agreed to consolidate and combine the Additional Principal amount and the Prior Mortgage and to modify the terms thereof and to consolidate and combine the indebtedness evidenced in this Agreement and the Prior Note in the manner hereinafter set forth;

**NOW THEREFORE**, in consideration of the mutual agreements herein expressed, the parties hereto covenant and agree as follows:

1. The Liens of the Additional Principal and the Prior Mortgage are hereby consolidated and combined so that together they shall hereafter constitute in law but One Single Lien or claim upon the Premises securing a principal sum of **FIVE HUNDRED THOUSAND DOLLARS AND NO CENTS ($500,000.00)** (collectively the "Consolidated Indebtedness") together with all accrued interest, fees, expenses and all other sums due under the Additional Principal and the Prior Note.

2. The Mortgagor will pay the Consolidated Indebtedness and interest thereon at the current interest rate of **6.000%** as provided for in this Agreement and the Consolidated Indebtedness will otherwise be governed by the terms, covenants and conditions of the Prior Note and this Agreement. The monthly payments of Principal and Interest in the amount of **$2,997.75** will commence on the **1st day of August, 2012**. The payments of Principal and Interest plus escrows as required will be made every month until the **1st day of July, 2042** on which date (the "New Maturity Date") all remaining principal, accrued interest and any other charges, described in this Agreement and the Prior Note as consolidated herein, will be due and payable. The new term of the loan is **360** months. As a result, the Mortgagor will be required to repay the entire principal balance and any accrued interest then owing on the **360th** month from the date of the first payment as mentioned in this agreement.

3. The Mortgagor warrants and represents that there are no defenses or offsets to the Consolidated Indebtedness.

4. The parties hereto certify that this instrument secures the same indebtedness evidenced by the obligations secured by this Agreement and the Prior Mortgage and secures no further of other indebtedness or obligations.

5.   All of the provisions of this Agreement  shall supersede all the provisions of the Prior Mortgage and Prior Note, and the Mortgagor agrees to comply with and be subject to all of the terms, covenants, and conditions of this Agreement.

6.  By signing this Agreement the Mortgagor and the Mortgagee are combining into one set of rights and obligations (a) all of the promises and agreements stated in the Prior Note and the Prior Mortgage; and (b) all of the promises and agreements stated in this Agreement.  This means that all of the Mortgagee's rights under the Prior Mortgage and this Agreement are combined so that under the law the Mortgagee has One Mortgage.  That One Mortgage covers the Prior Note and this Agreement and is a Single claim upon the Mortgaged property.  This combining of Note, Mortgage and Agreement is known as a "Consolidation" of the Note and the Mortgage.

**IN WITNESS WHEREOF**, this instrument has been executed by each of the parties hereto.

Witness:

_____     _____
                            Andrea C. Adovasio, as Borrower

_____ [Acknowledgements To Be Attached] _____

State of New York )
County of *Westchester*, )s.s.:

On the  31  day of  July  2012  in the year , before me, the above mentioned personnel, personally appeared, Andrea C. Adovasio personally known to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their  capacity(ies),   and   by  his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

SYLVIA LEINFELDER
Notary Public, State of New York
No. 01LE6191138
Qualified in Westchester County
Commission Expires August 4, 2012

_____
Notary Public.