USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/3/20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------X

AVAIL 1 LLC,

Plaintiff,

-against-

ANDREA C. ADOVASIO,

Defendant.

------------------------------------------------------X

**DECISION & ORDER**

18 Civ. 11209 (PED)

**PAUL E. DAVISON, U.S.M.J.:**

The plaintiff Avail 1 LLC ("Plaintiff") initiated the instant diversity action pursuant to the New York Real Property Actions and Proceedings Law ("RPAPL") against the defendant Andrea C. Adovasio ("Defendant") to foreclose on a residential mortgage. This case is before me for all purposes on consent of the parties pursuant to 28 U.S.C. § 636(c). Dkt. 11. Presently before this Court is Plaintiff's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure: Dkts. 19 (Plaintiff's motion), 22 (Plaintiff's memorandum of law), 25 (Defendant's memorandum of law in opposition), and 29 (Plaintiff's reply).

For the reasons that follow, Plaintiff's motion for summary judgment is **DENIED**. Defendant is **GRANTED** summary judgment.[1]

---

[1] I treat Defendant's memorandum of law in opposition as a cross-motion for summary judgment. "District courts have the discretion to grant summary judgment sua sponte, even without notice in certain circumstances." *Jian Yang Lin v. Shanghai City Corp*, 950 F.3d 46, 49 (2d Cir. 2020) (quoting *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Intern. Corp.*, 401 F.3d 28, 33 (2d Cir. 2005) and citing FRCP 56(f)(1) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.")). "When doing so, however, they must take care 'to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled

## I. BACKGROUND

On February 13, 2004, Defendant executed a Note and Mortgage to Ponce De Leon Federal Bank ("the Bank") whereby she agreed to pay the Bank $450,000, plus interest, on property located at 24 Elena Drive, Cortlandt Manor, NY 10567. Dkts. 28 at 1-2; 21 at 2-3. On July 31, 2012, Defendant executed a document entitled "Consolidation, Extension and Modification Agreement" ("CEMA") in which the Bank "extend[ed] to [Plaintiff] an additional principal sum of . . . **$59,600.87 ("Additional Principal")** in addition to the outstanding unpaid principal balance of the prior note amount of **$440,399.13** for a consolidated sum of **$500,000.00**," and set a new interest rate, payment schedule, and maturity date. Dkts. 1-1 at 30-31; 28 at 2.

---

thereto as a matter of law.'" *Id.* (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 73-74 (2d Cir. 1996)). "The essential inquiry when such a conversion is challenged . . . is not whether formal notice was served, but whether, based on the facts and circumstances of the particular case, the opposing party should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Id.* (quoting *Villante v. Dep't of Corr.*, 786 F.2d 516, 521 (2d Cir. 1986)).

Here, Plaintiff had ample notice that the Court might treat Defendant's opposition as a cross-motion for summary judgment, including the opportunity to submit supplemental briefing pursuant to the Court's May 8, 2020 Order, Dkt. 31, and address at oral argument the question of its standing. Additionally, all parties agreed in their filings and on the record at oral argument that there were no remaining genuine issues of material fact to be tried and that all remaining issues were questions of law.

Moreover, "[s]tanding 'is an essential and unchanging part of the case-or-controversy requirement of Article III," *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), and can be raised *sua sponte* "because [it] goes to this Court's subject matter jurisdiction," *id.* (citing *United States v. Quinones*, 313 F.3d 49, 57–58 (2d Cir.2002)). *See also U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Christian*, No. 19 Civ. 427 (CBA)(RML), 2020 WL 3918566, at *2 (E.D.N.Y. Feb. 25, 2020), *report and recommendation adopted*, No. 19 Civ. 427 (CBA)(RML), 2020 WL 3893015 (E.D.N.Y. July 10, 2020) (addressing the plaintiff's standing, *sua sponte*, in a foreclosure action).

Plaintiff alleges that Defendant "breached her obligation under the [CEMA], and thereby caused a default, by failing to pay the regular monthly payment which came due on October 1, 2017 (the "Event of Default") and all subsequent payments." Dkt. 21 at 3. Defendant admits to the default but is "unsure as to the exact date of the occurrence." Dkt. 28 at 2-3.

On April 5, 2018, an Assignment of Mortgage was executed in which the February 13, 2004 mortgage, "as modified by an unrecorded Agreement dated May 27, 2009," was assigned to Plaintiff. Dkts. 1-1 at 26-28; 28 at 2. Also on April 5, 2018, the Bank executed an Allonge to the February 13, 2004 Note in which payments on the Note were to thereafter be made to Plaintiff. Dkts. 1-1 at 23; 28 at 2. Defendant contends that the Assignment of Mortgage and the Allonge were insufficient to assign the mortgage and transfer the note, respectively, to Plaintiff. Dkt. 28 at 2.

On June 8, 2018, Plaintiff asserts that both a 30-day Default Notice and a 90-day Notice were mailed to Defendant by certified and first-class mail pursuant to RPAPL § 1304. Dkts. 28 at 3; 1-1 at 34-42.

On December 3, 2018, Plaintiff filed the instant complaint "to foreclose an extended and modified mortgage made by [Plaintiff]." Dkt. 1 at 2.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'") (quoting former Fed. R.

Civ. P. 56(c)). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323-24). To defeat a motion for summary judgment, the nonmovant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). "Assessments of credibility and choices between conflicting versions of the events

are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (citation omitted). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 553 (quoting *Anderson*, 477 U.S. at 252).

## III. DISCUSSION

"In a New York mortgage foreclosure action, a plaintiff makes a *prima facie* case—with summary judgment appropriate if nothing else is shown—where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor." *Onewest Bank, N.A. v. Guerrero*, No. 14 Civ. 3754 (NSR), 2016 WL 3453457, at *3 (S.D.N.Y. June 17, 2016) (internal quotations omitted) (quoting *Wells Fargo Bank, N.A. v. Ullah,* No. 13 Civ. 485 (JPO), 2015 WL 3735230, at *4 (S.D.N.Y. June 15, 2015), *appeal dismissed* (Sept. 3, 2015). "Additionally, where, as here, the plaintiff's standing is placed in issue by a defendant, the plaintiff must prove its standing as part of its prima facie showing," *JPMorgan Chase Bank, Nat. Ass'n v. Weinberger*, 142 A.D.3d 643, 644 (N.Y. App. Div. 2016) (citing *Flagstar Bank, FSB v Mendoza*, 139 A.D.3d 898 (2016) and *U.S. Bank, N.A. v Collymore*, 68 A.D.3d 752, 753 (2009)), and "the plaintiff must establish [its standing] before the burden shifts back to the defendant" to provide affirmative evidence of its defenses. *Guerrero*, 2016 WL 3453457, at *3 (quoting *Ullah,* 2015 WL 3735230, at *4). "Once the plaintiff has established its prima facie case[,] . . . the Mortgagee has a presumptive right to foreclose which can only be overcome by an affirmative showing by the Mortgager." *Id.*

Here, Defendant does not contest that she defaulted on the Mortgage, but she does appear to argue that Plaintiff's summary judgement motion should be denied (1) because the CEMA

does not constitute a valid lien on the property as the CEMA, the agreement pursuant to which Plaintiff is seeking to foreclose, was not properly executed and/or was not assigned to Plaintiff, endorsed to Plaintiff, or endorsed in blank; and (2) due to Plaintiff's failure to explain an unrecorded 2009 mortgage modification mentioned in the assignment of the original mortgage. Dkt. 25 at 3-4. Additionally, Defendant raises the following affirmative defenses: lack of standing and failure to comply with the notice provision of RPAPL § 1304.[2]

**A. Standing**

As Defendant raises the issue of Plaintiff's standing and, thus, Plaintiff must prove standing as part of its prima facie case, I begin—and end—there. "Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15–16 (2d Cir. 2015) (summary order) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980, 981 (2d Dep't 2015)). "Notably, '[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.'" *Id.* (quoting *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 754, 890 N.Y.S.2d 578, 580 (2d Dep't 2009)).

"A 'holder' is 'the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession.'" *U.S. Bank N.A. v Moulton*, 179 A.D.3d 734, 736 (2d Dep't 2020) (quoting *Deutsche Bank Natl. Trust Co. v Brewton*, 142

---

2 Although Plaintiff's motion addresses all of Defendant's affirmative defenses in her complaint, Defendant raises only the standing and notice defenses noted *supra* in her opposition and, accordingly, her residual affirmative defenses are deemed abandoned. *See Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016). Additionally, as I find that Plaintiff lacks standing, I do not reach any of the remaining claims and defenses.

A.D.3d 683, 684 (2d Dep't 2016)). "Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff." *Thompson*, 631 F. App'x at 15 (quoting *Wells Fargo Bank, NA v. Ostiguy,* 127 A.D.3d 1375, 1376 (3d Dep't 2015)). An allonge "is an additional piece of paper firmly attached to a note to provide room to write endorsements," and is required "[i]f the endorsement is not on the note itself." *Moulton*, 179 A.D.3d at 737 (citing *McCormack v Maloney*, 160 A.D.3d 1098, 1099 (3d Dep't 2018) and NY UCC § 3-202(2)).

Plaintiff argues that because it had physical possession of the Note, endorsed and made payable to Plaintiff by allonge dated April 5, 2018, prior to the commencement of this action on December 3, 2018, it has standing. Dkt. 29 at 5-7. Plaintiff further contends that its attachment of the note as an exhibit to the complaint alone was sufficient to establish standing. Dkt. 22 at 13 (citing *Cenlar FSB v. Tenenbaum*, 172 A.D.3d 806, 806-07 (2d Dept. 2019)). Defendant, on the other hand, argues (1) that Plaintiff's affidavit provided insufficient details demonstrating when and how the note came into Plaintiff's possession to confer standing, (2) that Plaintiff failed to prove that the allonge was "so firmly affixed to the note so as to become part of [the note]," which is required to establish standing, and (3) that the CEMA was not assigned or endorsed to Plaintiff or in blank, and, thus, Plaintiff does not have standing to foreclose on the CEMA. Dkt. 25 at 2-3. As I find that Plaintiff has failed to establish standing to foreclose on the CEMA, I do not address the first two arguments raised by Defendant.

The first question that must be answered is the impact of the CEMA, if any, on Plaintiff's standing. As discussed, Plaintiff is seeking to foreclose pursuant to Plaintiff's default under the CEMA, *see* Dkt. 1, which, according to the language of the CEMA, consolidates the terms of the 2004 mortgage and note with the terms of the CEMA itself.

Specifically, the CEMA was an agreement between Defendant and the original lender, Ponce De Leon Federal Bank, executed on July 31, 2012, whereby (1) the Bank extended to Defendant "an additional principal sum of . . . **$59,600.87** . . . in addition to the outstanding unpaid principal balance of the prior note amount of **$440,399.13** for a Consolidated sum of **$500,000.00**;" (2) Defendant's property was made "subject to the New additional Principal and the Prior Mortgage;" (3) the parties "agreed to consolidate and combine the Additional Principal amount and Prior Mortgage and to modify the terms thereof and to consolidate and combine the indebtedness evidenced in [the CEMA] and the Prior Note;" (4) "[t]he Liens of the Additional Principal and the Prior Mortgage [were] consolidated and combined so that together they . . . constitute[d] in law but One Single Lien or claim upon the premises" securing the $500,000 principal sum; (5) certain terms, including the interest rate, payment schedule, and maturity date of the loan, were modified; (6) the parties "certified that [the CEMA] secure[d] the same indebtedness evidenced by the obligations secured by [the CEMA] and the Prior Mortgage and secure[d] no further of other indebtedness or obligations;" (7) the parties agreed that the CEMA "supersede[d] all the provisions of the Prior Mortgage and Prior Note;" and (8) they agreed that the CEMA "combin[ed] into one set of rights and obligations (a) all of the promises and agreements stated in the Prior Note and the Prior Mortgage; and (b) all of the promises and agreements stated in [the CEMA]." Dkt. 1-1 at 30-32. The CEMA clarified that this final provision "mean[t] that all of [the Bank]'s rights under the Prior Mortgage and this [CEMA] are combined so that under the law [the Bank] has One Mortgage. That One Mortgage covers the Prior Note and [the CEMA] and is a Single claim upon the Mortgaged Property. This combining of Note, Mortgage and [the CEMA] is knows as a 'Consolidation' of the Note and the Mortgage." *Id.* at 32.

Without reference to this 2012 CEMA, in 2018, the Bank, via the Assignment of Mortgage discussed *supra*, assigned the February 13, 2004 mortgage to Plaintiff, Dkts. 1-1 at 26-28; 28 at 2, and the Bank attached an allonge to the February 13, 2004 Note in which payments on the Note were to thereafter be made to Plaintiff, Dkts. 1-1 at 23; 28 at 2.

Defendant, citing no authority, contends that the 2012 CEMA that she executed with the Bank lacks the requisite "gap note or consolidated mortgage," and "[w]ithout a note and [the CEMA] being recording [sic] on the land records, it is unclear how Plaintiff can treat this as a valid lien on the property and seek to foreclose." Dkt. 25 at 4. In other words, although Defendant does not contest that a mortgage and note under which she has defaulted exists, she appears to contend the CEMA was not properly executed and, thus, Plaintiff lacks standing to bring this claim based on the CEMA.

On May 8, 2018, the Court ordered the parties to file simultaneous supplemental briefs addressing specific questions raised by the Court concerning the proper execution of a CEMA, the consequences flowing from the CEMA either being properly or improperly executed and the potential effects this could have on Plaintiff's standing, and any impact the resolution of these questions could have on Plaintiff's recovery. Dkt. 31.

In her supplemental brief responding to the Court's Order, Defendant appears to contend that Plaintiff is seeking to foreclose on two mortgages which Plaintiff argues were incorrectly consolidated by the CEMA. Dkt. 35 at 2. Defendant explains that as every mortgage transaction must have both a note setting forth the borrower's obligation and a mortgage creating a lien on real property to secure the note, Plaintiff's failure to execute a new, or "gap," note means that no new obligation was created in the CEMA and, thus, if there is no obligation there can be no new lien "for there is nothing to secure." *Id.*

Also in response to the Court's Order, Defendant now contends that, "[i]f the CEMA is a valid agreement, not necessar[il]y a valid lien but just a valid agreement, by its terms [that all of the Bank's rights under the prior mortgage are combined so that under the law there is one mortgage], it extinguished the original mortgage." *Id.* at 4. At oral argument, Defendant clarified that while the she maintains that the CEMA is not an enforceable lien, it may be an enforceable contract in which case the Bank would be the proper plaintiff in a breach of contract action rather than a foreclosure action. In the alternative, Defendant argues that, if the CEMA is enforceable, only the Bank would have standing in a foreclosure action because the CEMA was never endorsed in blank, endorsed to Plaintiff, or assigned to Plaintiff.

Additionally, Defendant concedes that generally when a CEMA is created consolidating two previously existing mortgages, the first notes and mortgages still exist and may be assigned to other lenders and, "in theory, plaintiff could maintain an action on the original note only." Dkt. 35 at 3; *see, e.g., Benson v. Deutsche Bank Nat. Tr., Inc.*, 109 A.D.3d 495, 498 (2013) ("[w]here . . . balances of first mortgage loans are increased with second mortgage loans and CEMAs are executed to consolidate the mortgages into single liens, the first notes and mortgages still exist and may be assigned to other lenders"). However, Defendant also argues, as noted, that the allonge was insufficiently attached to the original note and, therefore, it also does not confer standing on Plaintiff. Dkt. 35 at 3.

Plaintiff, also citing no authority, argues that it does have a valid lien on the property and a gap note is not required as the instant CEMA "is not a true 'consolidation' agreement, as it did not consolidate two separate mortgage liens;" rather, "[i]t was one mortgage loan in the amount of $450,000.00, which Mortgage and Note were then restated in their entirety, then extended and modified by that instrument dated July 31, 2012," and "[t]he new terms are set forth in that

Agreement." Dkt. 29 at 6. Additionally, Plaintiff contends that "[a] modification agreement need not be recorded in the land records as it is only intended to change the terms of the Loan and not to change or modify Plaintiff's lien in the land records." *Id.*

In its supplemental brief, Plaintiff maintains that no new mortgage was created by the CEMA and that only the original note was modified. Plaintiff points to language in the CEMA indicating that it "supersedes, restates, and amends the original Note . . . by advancing to the borrower an additional $59,600.87," Dkt. 34 at 1, and to the second "THEREFORE" clause modifying the interest rate, monthly payment amount, and maturity date of the loan, Dkt. 1-1 at 31, as evidence that the CEMA increased the note, not the mortgage, which "simply means that the new Note amount of $500,000 is not fully secured by the Mortgage on the property," Dkt. 34 at 2. Plaintiff fails, however, to mention that the CEMA also "supersede[s] all the provisions of the Prior Mortgage." Dkt. 1-1 at 32. Additionally, Plaintiff argues that the fourth "THEREFORE" clause in which Defendant and the Bank "certif[ied] that [the CEMA] secure[d] the same indebtedness evidenced by the obligations secured by [the CEMA] and the Prior Mortgage and secures no further of other indebtedness or obligations," Dkt. 1-1 at 31, signifies that the CEMA "created a new Note" and that the CEMA was not an actual "CEMA" but rather simply a modification of the note, Dkt. 34 at 2. The Court observes that Plaintiff's assertions that the CEMA created a new note and only modified the original note appear to be at odds with one another. Moreover, as discussed *infra*, Plaintiff seems to ignore the language in the CEMA indicating that it is not a mere modification of the note. Indeed, at oral argument, Plaintiff's counsel conceded that the CEMA was not drafted properly.

In further response to the Court's Order, Plaintiff next argues that, assuming *arguendo* that the CEMA failed to create a valid lien, it "maintains its standing . . . as the holder of Prior

Note with allonge and the original CEMA, which modified the Prior Note" because "it is the ownership of the Note as modified that controls." Dkt. 34 at 2. Presumably due to the answer's negative effect on Plaintiff's standing, Plaintiff did not respond to the Court's question as to the consequences of the CEMA creating a valid lien.

Both parties ultimately agree that the "CEMA" in this case was not actually a consolidation of two mortgages. While Plaintiff argues that it was merely a modification of the original note and thus did not require a gap note or consolidated mortgage, Defendant contends that the CEMA was an *attempt* to consolidate two mortgage liens, but the CEMA was not properly executed due to the lack of a gap note or consolidated mortgage and is unenforceable.

As discussed above, Defendant now claims, in response to the Court's Order, that *if* the agreement is valid, though not conceding it would create a valid lien, the CEMA would extinguish the original note and mortgage. Dkt. 35 at 4 (citing *Plotch v. Wells Fargo Bank, N.A.*, No. 17 Civ. 00309 (NG) (RER), 2018 WL 344967, at *4 (E.D.N.Y. Jan. 9, 2018), *aff'd*, 758 F. App'x 221 (2d Cir. 2019)). In *Plotch*, the Court was tasked with deciding whether the CEMA was the only relevant mortgage or whether alleged defects in the prior mortgages affected the CEMA. 2018 WL 344967, at *4. The Court held that "a consolidated mortgage can supersede prior mortgages and become the operative agreement between the parties, if that is what their contract so provides," the CEMA had done so there, and as the plaintiff's allegations were all aimed that the prior mortgages, the plaintiff had failed to state a claim upon which relief could be granted as the CEMA was the only relevant mortgage. *Id.* Contrary to Defendant's assertion, however, it is not clear that *Plotch* explicitly addresses whether a valid "agreement" as Defendant alleges we have here, as opposed to a valid lien, would extinguish prior mortgages. In

any event, as discussed below, I find that the CEMA is not a mere modification of the original note and, pursuant to its terms, created a new note and new mortgage on the property.

Although CEMAs typically consolidate two previously executed mortgages into one document strictly for the convenience of the contracting parties, *see, e.g.*, *CIT Bank, N.A. v. Elliot*, No. CV154395JSARL, 2019 WL 2436212, at *3 (E.D.N.Y. Feb. 5, 2019) ("[t]he courts recognize the well-settled principle that a consolidation 'agreement is an instrument of convenience for the contracting parties only'"), here, the new note and new mortgage are contained in the CEMA itself and consolidated and combined with the original note and mortgage.[3] Indeed, as discussed above, the CEMA explicitly states (1) that a lien exists on the property with respect to the new money, (2) that it consolidates and combines both the new money and the prior mortgage *and* the new note and the prior note, (3) that it consolidates and combines the two liens which together constitute "in law but One Single Lien or claim upon the Premises securing the principal sum of . . . $500,000.00," (4) that the CEMA secures the notes secured by both the CEMA and the prior mortgage, (5) that it "supersede[s] all the provisions of the Prior Mortgage and Prior Note," (6) that it combines into one set of rights and obligations all of the promises and agreements stated in the prior note and mortgage with those in the CEMA, and (7) it reiterates that pursuant to the CEMA there is but one mortgage and claim under the law, Dkt. 1-1 at 30-32.

In other words, pursuant to its own language, the CEMA *consolidates* the original note and original mortgage with the new note and new mortgage created in the CEMA, and it *extends*

---

3 Notably, although both parties implicitly agree that a properly executed CEMA consolidating two existing mortgage liens would require a gap note and/or consolidated mortgage, here, as discussed, the new note and mortgage, as well as the consolidated note and mortgage are contained in the CEMA itself.

and *modifies* the terms of the original note and mortgage. Moreover, the CEMA supersedes the prior note and mortgage and adds "new money." Accordingly, I find, based on the language of the CEMA and the inclusion of the new principal sum of $59,600.87 in the CEMA, that the CEMA created a second mortgage, *see Nucci v. Phh Mortg. Corp.*, No. 14 Civ. 2683 (NGG) (RML), 2016 WL 1070815, at *4 (E.D.N.Y. Mar. 16, 2016), *aff'd*, 679 F. App'x 48 (2d Cir. 2017) ("A consolidation agreement combining multiple outstanding mortgages into a single lien is not considered a new mortgage where *no* new money is included in the consolidation." (emphasis added)), and that the CEMA extinguished or replaced the original note and mortgage, *see CIT Bank*, 2019 WL 2436212, at *3 (explaining that (1) a consolidated mortgage supersedes the prior mortgage where, as here, the language of the CEMA so provides, and that (2) the execution of a CEMA consolidating two existing mortgages and the promissory notes secured by them "did not extinguish or replace the two existing mortgages" where, as is *not* the case here, "no new money was included in the CEMA."). Additionally, the Court in *CIT Bank* further explained that "where the parties have entered into a CEMA for purposes of consolidating existing mortgages, *rather than refinancing those mortgages*, the CEMA becomes the operative instrument governing the rights and obligations of the parties, however the underlying mortgages are not extinguished." 2019 WL 2436212, at *3 (emphasis added).[4] Here, Defendant refinanced her loan from the Bank through the CEMA: the Bank lent Defendant new money; they revised

---

4 Both parties appear to implicitly agree that a CEMA that purports to make changes to the lien must be recorded in the land records. However, the parties have cited no authority, even after requests to do so, and this Court has found none, supporting the conclusion that a CEMA that has not been recorded in the land records, but contains language clearly stating it supersedes the prior note and mortgage and includes new money, cannot extinguish the underlying note and mortgage and/or confer standing on its assignee or holder.

the interest rate, payment schedule, and maturity date of the consolidated notes and mortgages; and they established one new mortgage, one new note, and one claim on the property.

Accordingly, I find that as the CEMA was not endorsed in blank, endorsed to Plaintiff, or assigned to Plaintiff, Plaintiff was not the holder or assignee of the CEMA prior to the commencement of this action and lacks standing. *See Thompson*, 631 F. App'x at 15-16.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **DENIED**, and Defendant is **GRANTED** summary judgment.

The Clerk of the Court is respectfully directed to terminate the pending motion (Dkt. 19), to enter judgment in favor of Defendant, and to close the case.

Dated: August 3, 2020
White Plains, New York

**SO ORDERED**

PAUL E. DAVISON, U.S.M.J.